Christopher LERRO, a minor by Michelle LERRO, his guardian and in her own right, Appellants,

v.

**UPPER DARBY TOWNSHIP and Deborah Madonna.**

Commonwealth Court of Pennsylvania.

Argued March 11, 2002.

Decided May 20, 2002.

Ronald Freemas, Media, for appellants.

Robert P. DiDomenicis, Media, for appellees.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, MIRARCHI, Senior Judge.

OPINION BY Judge LEAVITT.

Christopher Lerro, a minor, and his mother, Michelle Lerro, (Appellants) appeal an order of the Delaware County Court of Common Pleas (trial court), which granted Upper Darby Township's (Township) Motion for Summary Judgment. Appellants attempted to recover damages by asserting a cause of action under the Dog and Rabies Ordinance of 1977 (Dog and Rabies Ordinance)[1] and the Pennsylvania

1. Upper Darby Township, Pa., Ordinance 2521, The Dog and Rabies Ordinance of 1977    (June 21, 1977).

Dog Law Act (State Dog Law).[2] However, the trial court concluded that these laws did not give Appellants a private right of action and, thus, Appellants could not show an exception to the Township's immunity under what is commonly called the Pennsylvania Political Subdivision Tort Claims Act (Tort Claims Act).[3] We affirm.

On November 14, 1997, Appellants were guests at Deborah Madonna's (Madonna) apartment. Also present were several of Madonna's children and her pit bull, Sir Trooper Blue (Dog). Madonna left the premises and as she did so, she locked the Dog in a bedroom. After her departure, one of Madonna's children broke the lock on the bedroom door allowing the Dog to escape. The Dog attacked Christopher Lerro, injuring his face. The Dog also injured Michelle Lerro's hand as she attempted to release her son from the Dog's grasp. As a result of this incident, Christopher Lerro had to undergo surgery.

Prior to the attack on Appellants, the Dog had attacked at least three other individuals in the Township. The Township quarantined the Dog after the first attack and released it after receiving proof that it did not have rabies; it did not quarantine the Dog after the next two attacks. Further, the Township never reported any of the incidents to the State dog warden. The Township created an incident report on each attack by the Dog, but each report identified a different owner and different address for the Dog's owner.[4] The Township asserted that it did not realize that

the same animal was involved in all four attacks until the incident with Appellants.

After the November 1997 attack, Appellants sued Madonna and the Township to recover damages for their personal injuries. The Township moved for summary judgment in its favor, and the trial court granted it.

On appeal, Appellants contend that the trial court erred in granting summary judgment to the Township because it had failed to comply with either its own law, the Dog and Rabies Ordinance, or the State Dog Law. Appellants reason that if the Township had followed the mandate of these laws, then the Dog would have been destroyed prior to the attack upon Appellants.

Summary judgment is properly granted where there is no dispute concerning any material fact, and the moving party establishes its entitlement to judgment as a matter of law. *Herman v. Greene County Fair Board,* 112 Pa.Cmwlth. 615, 535 A.2d 1251 (1988). When considering a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party, accepting as true all well-pleaded facts and all inferences to be drawn therefrom. *Moles v. Borough of Norristown,* 780 A.2d 787 (Pa. Cmwlth.2001).[5]

The Tort Claims Act generally provides that a local agency, such as the Township, is immune from liability for injury to per-

---

2. Pennsylvania Dog Law Act, Act of December 7, 1982, P.L. 784, *as amended,* 3 P.S. §§ 459–101—459–1205.

3. 42 Pa.C.S. §§ 8541–8542.

4. The reports are entitled "Dog Bite." They do not identify the Dog by its distinctive name, "Sir Trooper Blue," and only one of the three reports identifies the breed of the animal. (Reproduced Record 14a–19a). Giv-

en the danger presented by vicious dogs, one hopes that this experience has resulted in improved reporting methods and increased vigilance in the Township.

5. Under *Herman,* our scope of review of the grant of a motion for summary judgment is limited to determining whether there has been an error of law or manifest abuse of discretion.

son or property. 42 Pa.C.S. § 8541.[6] However, a local agency may be held liable for such injury if both of the following conditions are satisfied: (1) damages would be recoverable under *a statute creating a cause of action*, and (2) the injury was caused by the negligent acts of the local agency acting within the scope of its office or duties with respect to one of the enumerated exceptions. 42 Pa. C.S § 8542(a)(1)-(2) (emphasis added).[7] Establishing that a local agency has an affirmative statutory or common law duty to the putative plaintiff is the threshold test under Section 8542(a). *Voren v. Bell Telephone Co. of Pennsylvania*, 150 Pa. Cmwlth. 507, 616 A.2d 66 (1992). Appellants claim such an affirmative duty under two statutes.

▆▆▆ Appellants' first claim is based upon the Township's alleged failure to enforce its Dog and Rabies Ordinance. Sec-

tion 21 of that ordinance provides as follows:

> Any dog which has bitten one or more persons a cumulative total of three bites within a calendar year, without good cause, shall be deemed to be vicious. No person may own a vicious dog within the Township of Upper Darby. Any such dog may be destroyed at the owner's expense.

Dog and Rabies Ordinance, § 21. Since the Dog bit three people within a calendar year, it was a "vicious" dog not permitted within the Township. Further, the Dog could have been destroyed at Madonna's expense, but taking this step was discretionary with the Township.[8] In addition, harboring a vicious dog exposed Madonna to certain penalties, including a fine not less than fifty dollars ($50.00) or ten (10) days in jail under Section 23(A) of the Dog and Rabies Ordinance.[9] Imposing any of the Section 23 penalties, however, involves

---

6. Section 8541 provides,

   Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

7. Section 8542 provides, in pertinent part,

   (a) **Liability imposed.**—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

   (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

   (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b).

8. Discretionary acts cannot be compelled by writ of mandamus.

9. The Dog and Rabies Ordinance states:

   *Section 23   Penalties*

   A. *Any person violating any section of this Ordinance shall,* upon summary conviction, *be sentenced to pay a Fine not in excess of two hundred dollars ($200.00)* or undergo *imprisonment for a period of thirty (30) days.* With regard to *violations in Sections* 11, 12, 20, and 21, the fine should not be less than fifty dollars ($50.00) or ten (10) days in jail.

   A. Each violation of each section of this Ordinance, or subsection thereof, shall be considered a separate offense; if such violation continues for more than one day (24 hours), each day's violation shall be a separate offense.

   A. A District Justice of the Peace may require the owner or keeper of a vicious or attack dog to post a bond with sufficient security in the amount of five hundred dollars ($500.00) to insure payment of damages or injuries caused by said dog.

   Dog and Rabies Ordinance, § 23 (emphasis added).

the exercise of prosecutorial discretion, which may not be compelled and is not subject to judicial review. *Commonwealth v. Malloy,* 304 Pa.Super. 297, 450 A.2d 689 (1982).

■ In short, the Dog and Rabies Ordinance does not establish a duty in the Township to Appellants that can be enforced in a private right of action. Appellants' argument is also unavailing for an even more important reason: Section 21 of the Dog and Rabies Ordinance has been abrogated. Section 507–A(c) of the State Dog Law, added by the Act of May 31, 1990, P.L. 213, provides that "those provisions of local ordinances relating to dangerous dogs are hereby abrogated." 3 P.S. § 459–507–A(c). Clearly, Section 21, which relates to "vicious dogs," is such an abrogated provision.

■ Appellants' second claim is based upon the Township's alleged failure to comply with the State Dog Law. Appellants believe that had the Township so complied, the Dog would have been quarantined or euthanized [10] prior to the attack.

The State Dog law provides, *inter alia,* that "[a]ll known incidents of dog attacks shall be reported to the State dog warden, who shall investigate each incident and

notify the department [11] if a dog has been determined to be dangerous." Section 505–A(e)(1), 3 P.S. § 459–505–(A)(e)(1). It also states that "[t]his article shall be enforced by all municipalities except counties." Section 507–A(a), 3 P.S. § 459–507(A)(a). Finally, Section 901 of the State Dog Law provides that

[t]he secretary,[12] through State dog wardens, employees of the department and police officers, *shall be charged with the general enforcement of this law.* The secretary may employ all proper means for the enforcement of this act and may enter into agreements pursuant to section 1002, which shall be filed with the department, for the purpose of dog control.

3 P.S. § 459–901(a) (emphasis added).

Enforcement of the State Dog Law is multi-faceted. The duty to report incidents of dog attacks appears to belong to the public generally, not just to municipalities. The Secretary of Agriculture has "general enforcement" responsibility for the State Dog Law, which makes the enforcement responsibility of municipalities, such as the Township, less than pellucid. Even if we were to resolve this conundrum by holding that the Township, along with Madonna, had a duty to report the attacks

---

10. Section 102 of the State Dog Law defines a "dangerous dog" as one determined as such under Section 502–A of the Act. 3 P.S. § 459–102. Section 502–A provides for a summary proceeding before a district justice, which then makes "a report of a determination under subsection (a) to the Bureau of Dog Law Enforcement." 3 P.S. § 459–502–A. The district justice proceeding may be initiated by the State dog warden or by a "local police officer." *Id.* If a dangerous dog, so determined under Section 502–A, attacks a person, it "shall be immediately confiscated, placed in quarantine for the proper length of time and thereafter humanely killed in an expeditious manner, with costs of quarantine and destruction to be borne by the dog's owner."

Section 505 of the State Dog Law, 3 P.S. § 459–505A(c).

In short, the Dog might have been destroyed had a report been made to the State dog warden, but only if a determination proceeding before a district justice had been initiated. Again, under *Commonwealth v. Malloy,* this involves the exercise of prosecutorial discretion which may not be compelled or even reviewed.

11. The "department" is the Pennsylvania Department of Agriculture. Section 102 of the State Dog Law, 3 P.S. § 459–102.

12. The State Dog Law defines "secretary" as the Secretary of Agriculture. Section 102 of the State Dog Law, 3 P.S. § 459–102.

by the Dog to the State dog warden, it does not advance Appellants' case against the Township unless that duty is one enforceable by Appellants.

■ As noted, the party charged with enforcement of the State Dog Law is the Secretary of Agriculture. Section 901(a) of the State Dog Law, 3 P.S. § 459–901(a). To the extent the Township failed to fulfill its duty under the State Dog Law, it is the responsibility of the Secretary of Agriculture to take appropriate action. Our appellate courts have held that where the General Assembly commits the enforcement of a regulatory statute to a government body or official, this precludes enforcement by private individuals. *See D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981) (wherein the Supreme Court held that because the Unfair Insurance Practices Act provided for enforcement by the Insurance Commissioner there was no private right of action); *Quirk v. Schuylkill County Municipal Authority,* 54 Pa.Cmwlth. 619, 422 A.2d 904 (1980) (wherein this Court held that where the legislature committed enforcement of a statute to "the Commonwealth" private

persons had no right of action). In any case, even if reports of the Dog's attacks had been made to the State dog warden, there is no guarantee that the Department of Agriculture would have responded by destroying the Dog or taken any action whatsoever. The General Assembly directed that the Secretary of Agriculture [13] be responsible for enforcement of the State Dog Law in all particulars. Appellants cannot meet their threshold burden under 42 Pa.C.S. § 8542(a) of showing that the Township has a duty to them under the State Dog Law that is enforceable in a private cause of action.

■ Even assuming, *arguendo,* that the Township had a duty under the State Dog Law enforceable by Appellants, the Township is immune from liability. The Tort Claims Act provides an exception to local agency immunity for the care, custody or control of animals. However, the exception applies only if the local agency *has possession or control* over the animals, such as police dogs or horses.[14] Here, the Dog was in the possession and control of its owner, Madonna, when the attack occurred.[15] Accordingly, because the excep-

---

13. The Secretary of Agriculture's decision to enforce the State Dog Law with respect to a particular dangerous dog or with respect to a municipality that may be derelict in its responsibilities involves the exercise of prosecutorial discretion and as such is not subject to judicial review. *See, Frawley v. Downing,* 26 Pa.Cmwlth. 517, 364 A.2d 748 (1976). This is because the administrative agency must be able to assess whether a violation has occurred and whether its resources are best spent on a particular enforcement action as opposed to another. *Heckler v. Chaney,* 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985).

14. The care, custody or control of animals exception, 42 Pa.C.S. § 8542(b)(8), provides:

(b) **Acts which may impose liability.**—The following acts by a local agency or any of

its employees may result in the imposition of liability on a local agency:

(8) *Care, custody or control of animals.*— The care, custody or control of animals in the possession or control of a local agency, including but not limited to police dogs and horses. Damages shall not be recoverable under this paragraph on account of any injury caused by wild animals, including but not limited to bears and deer, except as otherwise provided by statute.

15. In *Herman,* 535 A.2d at 1251, a team of horses escaped from their owners at a horse-pulling contest sponsored by the county on county property causing injury to a spectator. This Court held that the private owners were in direct control of the horses and not the county defendants; thus, the care, custody or control of animals exception to the Tort

tion in Tort Claims Act does not apply, the Township is immune from liability to the Appellants.

For these reasons, the order of the trial court granting summary judgment in favor of the Township is affirmed.

## ORDER

AND NOW, this 20th day of May, 2002, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is hereby affirmed.

Claims Act did not apply. Here, the Dog was owned by a private party, was on private property and under the control of a private party when the terrible attack occurred.