# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Concerned Residents of West Deer, :
Ryan Koleno, Delores Santacroce, :
Mark Murrin, Joseph Sasin, Leonard :
Sarver, Marcia Brissett, and Jack :
Rearick, : No. 951 C.D. 2024
                   Appellants : No. 1358 C.D. 2024
                              : ARGUED: November 6, 2025
               v. :
                              :
Township of West Deer, Board of :
Supervisors of the Township of West :
Deer, and EQT Artemis Midstream, LLC :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**          **FILED: December 11, 2025**

        Appellants, Concerned Residents of West Deer (CROWD), Ryan Koleno, Delores Santacroce, Mark Murrin, Joseph Sasin, Leonard Sarver, Marcia Brissett, and Jack Rearick (collectively, CROWD), appeal from the order of the Court of Common Pleas of Allegheny County, that affirmed the decision of the Board of Supervisors of the Township of West Deer granting the conditional use and land development applications of EQT Artemis Midstream, LLC (Artemis),[1] subject to certain conditions. We affirm.

---

[1] The applications to the Board were submitted by Hyperion Midstream LLC, a wholly owned subsidiary of Olympus Energy LLC. By Order issued September 11, 2025, this Court **(Footnote continued on next page…)**

In March 2023, Artemis filed both a conditional use application and a land development application with the Board, along with approximately 1,500 pages of supporting documents. Board's Findings of Fact (F.F.) Nos. 2, 5. Artemis sought approval to develop and operate "the Deer Creek Interconnect and associated Pipeline project" (Interconnect) on property owned by Allison Park Contractors at 4389 Gibsonia Road, located in the Township of West Deer's Special Use (SU) zoning district. Reproduced Record (R.R.) at 412;[2] *see also* F.F. No. 3. Specifically, the application identifies the requested conditional use as "Oil and Gas Development – Construction and operation of the Deer Creek Interconnect facility and associated natural gas pipeline." R.R. at 416. The Property is currently used as a contractor's yard and there is "a surface use agreement authorizing [Artemis] to construct and operate the Interconnect on a portion of the Property." F.F. Nos. 25, 26.

The Township Planning Commission reviewed the applications at multiple meetings and voted unanimously to recommend approval. F.F. No. 6. The Board subsequently held public hearings over two nights at which Artemis presented the testimony of Ryan Dailey, project manager and certified floodplain manager, and Jeremy Burden, Vice President of Engineering and Construction. F.F. Nos. 21, 67. Ryan Koleno, Josh Wiegand, Jack Rearick, and Neil Crowley testified in objection to the applications, as did Tim Resciniti on behalf of the unincorporated association known as CROWD. All of the named Appellants herein were granted party status. *See* F.F. No. 13 and App'x A.

---

granted Hyperion's unopposed application for substitution of parties because Artemis "is now the owner of the assets central to this appeal and has succeeded to the interests of Hyperion as the proper" party. 9/11/2025 Order of Cmwlth. Ct. at 1. This opinion will refer only to Artemis to avoid confusion.

[2] We note that the page numbers in the Reproduced Record are not followed by a small a as instructed in Pa.R.A.P. 2173.

The Board ultimately granted Artemis's applications subject to 30 conditions. *See* R.R. at 1479-1518. In its thorough decision, the Board found Mr. Dailey and Mr. Burden to be credible witnesses, and accepted their testimony over that of CROWD. F.F. Nos. 66, 96. Notably, the Board determined that Artemis's proposed Interconnect falls within the Township Zoning Ordinance's definition of "oil and gas development or development," which is a conditional use authorized within the SU zoning district. Board's Conclusions of Law (COL) Nos. 118, 120. The Board further held that Artemis met its initial burden regarding the specific requirements for a conditional use, COL No. 161, and that CROWD's "vague concerns" and "alleged adverse impacts from oil and gas development generally" were not enough to rebut the presumption that the conditional use is consistent with public health, safety, and welfare, COL Nos. 162-66.

CROWD filed separate notices of appeal for the conditional use and land development application approvals. The appeals were consolidated before the trial court and Artemis intervened as of course.[3] The trial court appealed without taking additional evidence, and the appeals to this Court followed.[4]

Upon review of the record, the parties' arguments,[5] and the law, we conclude that the trial court ably addressed and resolved the issues raised by

---

[3] *See* Section 1004-A of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11004-A (providing that "any owner or tenant of property directly involved in the action appealed from may intervene as of course by filing a notice of intervention" within 30 days).

[4] We note that, in lieu of filing their own briefs to this Court, the Township and the Board fully joined in Artemis's brief.

[5] As Artemis notes, several of the issues CROWD addresses in its brief were not raised before either the Board or the trial court and are therefore waived. *See BR Assocs. v. Bd. of Comm'rs of Twp. of Upper St. Clair*, 136 A.3d 548, 556 (Pa. Cmwlth. 2016) (objectors' failure to raise issue before the board resulted in waiver of that issue); *see also In re Smith*, 231 A.3d 59, 68 **(Footnote continued on next page…)**

3

CROWD. Accordingly, we affirm on the basis of the thorough and well-reasoned opinion of the Honorable Mary C. McGinley in *Concerned Residents of West Deer v. Township of West Deer* (C.C.P. Allegheny, Nos. S.A. 23-000581, S.A. 23-000582, filed June 28, 2024) (appended hereto).

---

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

n.16 (Pa. Cmwlth. 2020) (issues raised for the first time in objectors' brief to this Court were waived). For example, it does not appear that CROWD raised before the Board its current claims that the Interconnect should be characterized as a natural gas processing plant, which is only authorized in the Industrial zoning district; that because there are multiple uses on the Property, the application does not meet the Ordinance's setback requirements (claiming that Artemis's buildings must be setback from the contractor's yard buildings and structures as well as the property lines); or that the Interconnect should not be allowed as a conditional use because there are no specific criteria to meet for oil and gas development.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Concerned Residents of West Deer, : 
Ryan Koleno, Delores Santacroce, : 
Mark Murrin, Joseph Sasin, Leonard : 
Sarver, Marcia Brissett, and Jack : 
Rearick, :     No. 951 C.D. 2024
            Appellants :     No. 1358 C.D. 2024
            :
          v. :
            :
Township of West Deer, Board of : 
Supervisors of the Township of West : 
Deer, and EQT Artemis Midstream, LLC :

## O R D E R

AND NOW, this 11th day of December, 2025, the order of the Court of Common Pleas of Allegheny County is hereby AFFIRMED.

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CONCERNED RESIDENTS OF WEST DEER, RYAN KOLENO, DELORES SANTACROCE, MARK MURRIN, JOSEPH SASIN, LEONARD SARVER, MARCIA BRISSETT, and JACK REARICK,

*Appellants,*

*v.*

TOWNSHIP OF WEST DEER and BOARD OF SUPERVISORS OF THE TOWNSHIP OF WEST DEER,

*Appellees,*

*v.*

HYPERION MIDSTREAM LLC,

*Intervenor.*

CIVIL DIVISION

**S.A. 23-000581**

**S.A. 23-000582**

**(Consolidated at SA 23-581)**

Mary C. McGinley, Judge

**OPINION**

COPIES SENT TO:

*Counsel for Appellants*:
John M. Smith, Esq.
Abigail P. Briggs, Esq.
Smith Butz, LLC
88 Center Church Road
McMurray, PA  15317

*Counsel for Appellees:*
Gavin A. Robb, Esq.
Ashley Puchalski Thomas, Esq.
Tucker Arensberg, P.C.
1500 One PPG Place
Pittsburgh, PA 15222

Blaine A. Lucas, Esq.
Michael T. Korns, Esq.
Anna Skipper Jewart, Esq.
Babst, Calland, Clements
& Zomnir, P.C.
Two Gateway Center, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

CONCERNED RESIDENTS OF WEST,          CIVIL DIVISION
DEER, RYAN KOLENO, DELORES           **S.A. 23-000581**
SANTACROCE, MARK MURRIN,            **S.A. 23-000582**
JOSEPH SASIN, LEONARD SARVER,     **(Consolidated at SA 23-581)**
MARCIA BRISSETT, and JACK REARICK,

*Appellants,*

v.

TOWNSHIP OF WEST DEER and
BOARD OF SUPERVISORS OF THE
TOWNSHIP OF WEST DEER,

*Appellees,*

v.

HYPERION MIDSTREAM LLC,

*Intervenor.*

## OPINION

**MCGINLEY, J.**                                    **JUNE 28, 2024**

This appeal arises from the decision of the Board of Supervisors of the Township of West Deer ("Board") concerning a Conditional Use Application filed by Hyperion Midstream, LLC ("Hyperion"). Hyperion sought approval for "Oil and Gas Development – Construction and operation of the Deer Creek Interconnect

1

facility and associated natural gas pipeline" in the Special Use (SU) Zoning District. The Interconnect is proposed to be on property located at 4389 Gibsonia Road, owned by Allison Park Contractors. A pipeline is planned to begin at the proposed Leto Well Pad in the Township, traverse eight parcels and end at the proposed Interconnect. Hyperion also submitted a Land Development Application. WD 1741-1742.[1]

The group of appellants consist of an unincorporated association known as Concerned Residents of West Deer ("CROWD") and individual objectors Ryan Koleno, Delores Santacroce, Mark Murrin, Joseph Sasin, Leonard Sarver, Marcia Brissett and Jack Rearick ("Appellants"). WD 1744.

The Township Planning Commission reviewed Hyperion's Applications and voted to recommend approval. The Board held public hearings on July 25, 2023 and July 26, 2023. On September 20, 2023, the Board rendered its Findings, Conclusions and Decision approving Hyperion's conditional use application subject to 30 conditions. WD 1741-1780. The Board also approved Hyperion's land development

---

[1] Citations to the Record are referenced herein as "WD." The Record filed by the Township and Board in this case is disjointed. On the local docket:
- Docket Document No. 8 contains the table of contents for the Record
- Docket Document No. 9 contains WD 1-WD 500
- Docket Document No. 7 contains WD 501-WD 899, filed in duplicate at Docket Document No. 11
- Docket Document No. 6 contains WD 900-WD 1399
- Docket Document No. 10 contains WD 1400-WD 1780

application. It is from those decisions that the Appellants appeal. The appeals have been consolidated.

When the trial court takes no additional evidence, the scope of its review is limited to determining whether the Board committed an error of law, abused its discretion or made findings not supported by substantial evidence. Mars Area Residents v. Zoning Hearing Board, 529 A.2d 1198, 1199 (Pa. Cmwlth. 1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Valley View Civic Association v. Zoning Board of Adjustment, 462 A.2d 637, 640 (Pa. Cmwlth. 1983). An abuse of discretion occurs if substantial evidence does not support the Township's essential findings. Valley View, 462 A.2d at 640. The interpretation of a zoning ordinance is an issue of law, requiring the court's *de novo* review. Tennyson v. Zoning Hearing Board, 952 A.2d 739, 744 (Pa. Cmwlth. 2008).

Determinations as to the credibility of witnesses and the weight to be given to the evidence are matters left solely to the Board in the performance of its fact-finding role. Pennsy Supply, Inc. v. Zoning Hearing Bd., 987 A.2d 1243, 1250-1251 (Pa. Cmwlth. 2009).

Conditional Use Analysis

It is well-settled that special exceptions and conditional uses are not actual exceptions or variances from a zoning ordinance, but rather are uses expressly permitted, provided that the applicant meets certain enumerated standards. Bray v. Zoning Board of Adjustment, 410 A.2d 909, 911 (Pa. Cmwlth. 1980). When a municipality authorizes a conditional use, a presumption arises that the governing body has already considered that the use is consistent with the public health, safety, and welfare. An applicant is entitled to conditional use approval unless it is determined "that the use does not satisfy the specific, objective criteria in the zoning ordinance for that conditional use," or the presumption is rebutted by any objectors. *See* In Re: Drumore Crossings, L.P., 984 A.2d 589, 595 (Pa. Cmwlth. 2009). Under Bray, once an applicant proves that its proposed use falls within the parameters of the conditional use being sought, and the specific requirements of the ordinance have been met, then the burden shifts to those opposed to the conditional use application to present evidence that the health, safety and general welfare requirements have not been met. Bray at 912-13. The Board properly analyzed the shifting burdens posed by a conditional use application, concluding:

> 160. Because the Board, by ordinance, has authorized "Oil and Gas Development or Development" as a conditional use in the SU Zoning District, the Township has already decided that oil and gas development at the proposed Interconnect site is consistent with the general public health, welfare, and safety.

WD 1771.

161. Furthermore, because Hyperion has satisfied its burdens of presentation and proof with respect to the specific objective criteria of the Zoning Ordinance, the presumption that the use is consistent with the health, safety, and welfare of the community applies and Applicant was not required to present evidence with respect to the same. *See MarkWest*, 184 A.3d at 1059; *Allegheny Tower Assoc. v. City of Scranton Zoning Hearing Bd.*, 152 A.3d 1118, 1123-24 (Pa. Commw. Ct. 2017); *Greaton Properties v. Lower Merion Twp.*, 796 A.2d 1038, 1045-46 (Pa. Commw. Ct. 2002).

WD 1772.

The Board noted that the burden then shifted to the Appellants "with regard to all general policy concerns and general detrimental effects." WD 1770. The Board stated that it sympathizes with Appellants' concerns about this new use and realizes the importance of the environmental issues. However, it also noted that the environmental issues are not within the jurisdiction of the Board. Further, it concluded that the concerns presented by the Appellants were vague. It stated at Conclusion of Law No. 164:

164. Virtually all of the general health and safety issues CROWD and the Individual Objectors raised were aimed at alleged impacts of the oil and gas industry generally, not specific to any unusual or abnormal impacts at the proposed interconnect site or involved broader environmental or operational impacts within the jurisdiction of DEP and other regulatory agencies.

WD 1772.

5

<u>Interconnect is an authorized use in the SU Zoning District</u>

Many of Appellants' arguments focus on the interpretation of the Ordinance. Notably, a local governing body is entitled to considerable deference in interpreting its zoning ordinance. <u>In re AMA/American Marketing Ass'n, Inc.</u>, 142 A.3d 923, 934 (Pa. Cmwlth. 2016), *citing*, <u>Aldridge v. Jackson Twp.</u>, 983 A.2d 247 (Pa. Cmwlth. 2009). Appellants allege that the Board erred because an "Interconnect" is not listed as an authorized use in any zoning district. The Board concluded that the Interconnect use falls within the definition of "oil and gas development or development." Section 210-6 defines it as:

> The well site preparation, construction, drilling, redrilling, hydraulic fracturing, non-hydraulic fracturing (including stimulation by explosives), and/or site restoration associated with an oil or gas well of any depth; water and other fluid storage, impoundment and transportation used for such activities; and the installation and use of all associated equipment, including tanks, meters, and other equipment and structures whether permanent or temporary; and the site preparation, construction, installation, maintenance and repair of oil and gas pipelines and associated equipment and other equipment and activities associated with the exploration for, production and transportation of oil and gas. The definition does not include natural gas compressor stations and natural gas processing plants or facilities performing the equivalent functions.
>
> WD 24-25

Although an "interconnect" is not explicitly provided for in the Ordinance, a review of the Record establishes that an interconnect is an integral part of the oil and gas operation. An interconnect, as proposed here, is equipment associated with

6

pipelines and with the transportation of natural gas. Jeremy Burden, vice president of engineering and construction for Olympus Energy, testified as to the components of an interconnect and what the pipeline does at the interconnect. He explained that the purpose of the interconnect is to facilitate the flow of natural gas from Olympus' Leto Well Pad and the Tyche Well Pad to the existing EGTS interstate transmission line. WD 1266-1277. The Board found Mr. Burden to be a credible witness. WD 1759. Section 210-120.A(21)(c)[1] of the Ordinance authorizes oil and gas development as a conditional use. It states:

> No oil and gas development, oil and gas well site, natural gas compressor station, or natural gas processing plant or an addition to an existing oil or gas well site, natural gas compressor station, or natural gas processing plant shall be constructed or located within the Township unless an application for conditional use has been approved by the Township approving the construction or preparation of the site for oil and gas development or construction of natural gas compressor stations or natural gas processing plants.
> WD 113.

Also, the Table of Authorized Land Uses states that "gas and oil production" is authorized by conditional use in all zoning districts including the SU district. WD 1521. As the Board concluded, gas and oil production include the Interconnect.

The Court is not persuaded by the argument that by applying for the "Interconnect" as "Oil and Gas Development," the applicant functionally applied for a Conditional Use as a Deep Well Site. The Record demonstrates that the Leto Well

7

Pad is actually a deep well site, and the Interconnect is located over 6,900 feet south of it. WD 1425-1426. The Board also properly rejected the conclusion that the Interconnect is a "processing plant." By definition in the Ordinance, a "Natural Gas Processing Plant" is a specifically designed *facility* constructed to remove certain materials. WD 23. The undersigned concurs that the passive, limited purpose of the Interconnect is not what is contemplated by the Ordinance.

Appellants' argument that "Gas and Oil Production" is a category for which there are no criteria for the Board to evaluate in approving it is also unavailing. In falling within the definition of oil and gas development, the Interconnect is required to comply with any generally applicable ordinance. Further, specific criteria and manner of evaluation are set forth, including in Section 210-120.A(c)[1] and [2] (Application Criteria) and Section 210-120.A(d)(Preapplication Conferences).

The Principal Use Requirement

Appellants submit that the proposed interconnect violates the principal use requirement because the property already has a principal use, a Contractor's Yard. They cite Section 210-6 of the Ordinance which defines a "use, principal" as "[t]he major or dominant use of a lot," and an "accessory use" as "[a] use on the same lot with, and clearly incidental and subordinate to, the principal use on the lot." However, a review of the Record and the Ordinance establish that having more than

one principal use on a lot is not prohibited. The Board properly concluded at Conclusion of law No. 151:

> 151. The Party Objectors assert that the Interconnect cannot be located on the same parcel as the existing contractor's yard. However, even assuming for the sake of argument that the Board agreed that there would be two principal uses on the Property, the Township Zoning Ordinance does not explicitly prohibit two principal uses on the same parcel.
>
> WD 1770.

Use of the Property as a Contractor's Yard

Appellants argue that the surface owner was required to obtain conditional use approval for its use of the Property as a contractor's yard, and because it has failed to do so, the Board erred in approving the conditional use for the Interconnect. When this issue was raised during the hearing through objection from Ryan Koleno, the Board overruled it. Mr. Koleno asserted this as a basis for the hearing not to proceed. WD 1745; WD 1259-1265. This position lacks legal authority. Neither the Zoning Ordinance nor the SALDO support the position that an alleged violation of the ordinance with respect to an existing use is a basis to deny an application for a proposed use unrelated to the existing use. The Court concurs that the public hearing on the conditional use application for a separate use was not the forum for resolution of alleged issues with respect to an existing use. Therefore, the Board's ruling was not erroneous.

9

<u>Lot Coverage</u>

Appellants claim that the Interconnect does not meet the maximum lot coverage requirements. The Board concluded that according to the Nonresidential Dimensional table in the Ordinance, the maximum lot coverage in the SU Zoning District is 40%. Lot coverage is defined as "that percentage of the lot covered by principal and accessory structures and/or buildings." WD 1765. The Board disagreed with Appellants' calculation of the size of the Property finding that the area was 11.048 acres. The Board concluded that the proper calculation of the term "lot coverage" should be limited to areas where there are buildings, equipment and, arguably stored materials. To that end, the Board noted that while no party provided a calculation based on those features, a review of Appellants' Exhibit 3 WD 1479, shows that lot coverage would be less than 10%. WD 1766. The Board's analysis on this issue was comprehensive and is entitled to deference.

<u>Floodplain Permit</u>

Appellants claim that Hyperion failed to comply with the floodplain requirement. Section 125-3(A) states:

> It shall be unlawful for any person, partnership, business or corporation to undertake, or cause to be undertaken, any construction or development anywhere within West Deer Township unless a permit has been obtained from the floodplain administrator.

However, the Board found that it would have been premature for Hyperion to obtain a permit before it received conditional use approval and therefore conditioned its approval on Hyperion obtaining a floodplain permit under the Township's Floodplain Ordinance. WD 1768. *See* Condition of Approval No. 30 WD 1780. The Board correctly concluded that this is more properly a post-conditional use approval requirement, compliance with which cannot be a basis for denial of a conditional use. WD 1768-1769.

Completeness of the Application/Evidentiary Objections

Appellants also argue that compliance history information was not included in the application, rendering it incomplete. The Applicant submitted an over 600 page application to the DEP for its Erosion and Sediment Control General Permit and submitted its application to the DEP for a Water Obstructions and Encroachment Permit. Testimony established that the DEP has implemented an electronic permitting system and compliance history information is populated to the electronic permit application, which was accessible to Appellants. WD 1220-1221.

With respect to evidentiary rulings, at the hearing, Township citizen, Neil Crowley ("Mr. Crowley") sought to introduce evidence of Applicant's compliance history that was provided to the DEP. After considering objections based upon relevance and hearsay, the Board decided to hear evidence of actual violations that

led to fines only to the extent that they relate to the interconnect or pipelines but the Board did not consider notices of violation ("NOVs"). WD 1333. The Pennsylvania Commonwealth Court and the Environmental Hearing Board ("EHB") have held that NOVs are not appealable. *See, e.g.*, Sunbeam Coal Corp. v. Com., Dep't of Environmental Resources, 304 A.2d 169 (Pa. Cmwlth. 1973); Fiore v. Com., Dep't. of Environmental Resources, 510 A. 2d 880 (Pa. Cmwlth. 1986). The undersigned concurs that a NOV is not evidence of a violation but is only an allegation and evidence regarding NOVs was properly precluded.

Appellants next contend that interrogation about whether the gas pipeline was necessary for the operation and production of the deep well at the Leto Well Pad was improperly precluded as a legal conclusion upon objection by counsel. Notably, this conclusion implicates interpretation of the Ordinance, which calls for a legal conclusion. To the extent that the inquiry calls for factual evidence, the record was clearly developed with respect to the functions of the Leto Well Pad, the Interconnect and the pipeline connecting the two facilities. Therefore, preclusion of the evidence, even if erroneous, was harmless.

In sum, after review of the applicable Ordinance and the record facts, the Board properly approved Hyperion's conditional use application and land development application. Appellants' appeals are denied.

BY THE COURT:

_____ J.
Mary C. McGinley